UNITED STATES *v.* CITRUS & ALLIED ESSENTIAL OIL CO. ET AL.

**No. 6273.**—Invoices dated Ciudad Trujillo, Dominican Republic, February 26, 1942, etc.
Certified February 26, 1942, etc.
Entered at New York, N. Y., March 9, 1942, etc.
Entry No. 741849, etc.

Second Division, Appellate Term

(Decided April 29, 1946)

*Paul P. Rao,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the appellant.
*John D. Rode (Jacob L. Klingaman* of counsel) for the appellees.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

TILSON, Judge:   This application was filed under the provisions of section 501 of the Tariff Act of 1930 seeking a review of the decision of the trial court.   The merchandise consists of orange oil exported from the Dominican Republic and entered at the port of New York on March 9, February 18, and March 2, 1942.   Entry was made at a value of $2.40 per pound, plus cases, in accordance with the values shown on the invoices.   It was appraised at $3 per pound, packed. The trial court found a value for said merchandise of $2.40 per pound, packed, holding that the evidence offered by appellee established a *prima facie* case, and that the "Defendant's evidence relates to a period not included within the time covered by these shipments and therefore is not acceptable to contradict the averments by plaintiff."

Appellant contends that the trial court erred in entering judgment and holding that:

* * *   the product was freely offered to all purchasers in the principal market of Ciudad Trujillo for exportation to the United States at $2.40 per pound, plus packing.

and in finding and holding that:

* * *   Defendant's evidence relates to a period not included within the time covered by these shipments and therefore is not acceptable to contradict the averments by plaintiff, which I hold to be sufficient to establish a *prima facie* case.

In our opinion the second assignment of error is not material to a decision by us, since it appears that considering the evidence offered by the defendant in the court below as relating to a period included

within the time covered by these shipments, the weight of all the evidence is ample to support the decision of the trial court.

Exhibit 7 is an affidavit offered by counsel for the plaintiff in the court below in which one, Otacilio Minier, swears:

\* \* \* that he is a resident of Puerto Plata in the Dominican Republic; that he was formerly employed by the Citrus & Allied Essential Oils Company of Puerto Plata R. D.; that he was so employed during the month of January 1942; that he was at that time the manager of said Company in Puerto Plata; that as such he is familiar with the fifteen cases of orange oil exported January 16, 1942 on the S. S. San Jacinto by the said firm to Citrus & Allied Essential Oils Company of 61 Sheffield Ave., Brooklyn, N. Y. U. S. A. covered by Consular Invoice Number 0164 certified at Ciudad Trujillo on February 4, 1942; that as manager of the said company in Puerto Plata he was familiar with market conditions at that time in the Dominican Republic for such or similar orange oil; that he was in touch with various producers and sellers of such or similar orange oil; that based upon his experience in dealing in orange oil he knows that the City of Trujillo was one of the principal markets for orange oil in the Dominican Republic; that in the ordinary course of trade the usual wholesale quantities in which such or similar orange oil was dealt in was one pound or upwards, the price per pound being the same regardless of quantity; that during the month of January 1942 the price at which orange oil was freely offered for sale to all purchasers in the principal markets of the Dominican Republic for exportation to the United States was $1.60 per pound packed ready for shipment to the United States; that during the month of January 1942 there was no demand for such or similar orange oil for home consumption in the Dominican Republic \* \* \*

Of similar purport is the affidavit of J. Arismendi Trujillo, in evidence herein as exhibit 8, from which the following is quoted:

\* \* \* that based upon his experience in the orange oil business in buying, selling and producing such oil, he knows that the City of Trujillo is one of the principal markets in the Dominican Republic for orange oil; that the usual wholesale quantities in which orange oil the same as or similar to the orange oil covered by the above shipments was dealt in was one pound or more; that the price per pound was the same regardless of quantity purchased, there being no quantity discounts; that during the month of February 1942 and including the period immediately preceding and immediately subsequent thereto, the market value or the price at which orange oil the same as or similar to the orange oil covered by the above mentioned shipments was freely offered for sale to all purchasers in the principal markets of the Dominican Republic, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the orange oil in condition packed ready for shipment to the United States was $2.40 per lb. plus packing of $1.10 per case of twenty-eight pounds; that during the period above mentioned his firm freely offered such or similar orange oil to all purchasers in the principal markets of the Dominican Republic for exportation to the United States; that during the period above mentioned, orange oil such as or similar to the orange oil covered by the shipments enumerated above was not sold for home consumption in the Dominican Republic, as stated on said consular invoices, there being no use for such oil and no demand therefor \* \* \*

The substance of the statements contained in exhibits 9 and 10 is

quite in harmony with the statements hereinabove quoted from exhibits 7 and 8.

In addition to the above evidence, counsel for the plaintiff in the court below produced the testimony of Charles Pisano, one of the importers herein, which in all material respects corroborates the evidence hereinbefore set out, and fully supports the decision of the trial court.

Counsel for the Government, in support of the appraised values, for which he contends, offered and there were admitted in evidence collective exhibits 11, 12, 13, 14, and 15. In describing these exhibits the witness stated that they consisted of "Complete entry papers which have been liquidated taken from the files of the liquidated entries." These exhibits show that the merchandise involved, orange oil, was invoiced, entered, and appraised at $3 per pound. The invoices appear to have been consulated at Ciudad Trujillo, Dominican Republic, on dates ranging from December 23, 1941, to June 2, 1942.

As to the appraised values of the merchandise covered by the five exhibits above referred to, the examiner who examined the said merchandise testified as follows:

Q. So in all these cases, it was $3.00 per pound?—A. Except for the last, the prices were c. i. f., in fact, in other words there was a small amount of freight which we took off the unit prices.

The examiner also testified that the merchandise covered by the above five exhibits was "such" merchandise as that covered by the appeals now before us. The fact that the price of the merchandise before us did not vary according to the quantity purchased eliminates any question of wholesale or usual wholesale quantity.

It will thus be seen that the merchandise covered by the five exhibits referred to above consisted of orange oil "such" as the orange oil now before us; that the dates of the sale of such orange oil closely approximate the dates of the sale of the merchandise before us, and that such sales were consummated in one of the principal markets of the country of exportation. However, there is nothing in the record before us to show that the sale of the merchandise covered by the five exhibits above referred to was made in the ordinary course of trade or that the offer which resulted in the sale was a free and unrestricted offer to all purchasers.

In *Hensel, Bruckmann & Lorbacher* v. *United States*, Reap. Dec. 5010, in dealing with a similar situation, this court said:

At the trial a number of photostatic copies of invoices to other importers, *pro forma* invoices, and other papers used in the entry and clearance of merchandise through customs, were admitted in evidence as Collective Exhibit 6. * * * Even if the merchandise shown by these papers and that before the court were accepted as identical, there appears no reason why the importer herein should be bound by those values, when they were never questioned in court.

In *United States* v. *Hensel, Bruckmann & Lorbacher*, Reap. Dec. 5244, in affirming the above holding of the trial court, the appellate division observed:

With reference to said exhibit, which consists of photostatic copies of invoices made at various times covering silk, some of which is not identical with the silk in question, we are of the opinion that it can have little if any value as evidence of export value of the merchandise in the instant shipments. As we gather from the testimony, none of these cases was appealed to reappraisement. In the instant case the importer did appeal and has offered testimony that tends to overcome the action of the appraiser in determining values as appraised. It is entirely possible that similar evidence might have been adduced with reference to the merchandise on the invoices covered by said exhibit 6.

The above views find complete confirmation in *Sears, Roebuck & Co. et al.* v. *United States*, 31 C. C. P. A. 36. In that case there were introduced in evidence "certain consular invoices and entries of Montgomery Ward & Co.   *   *   *   covering importations from Germany of standard plow steel wire rope, some of which is the same size as some of that here involved and some of which was exported during substantially the same period as some of the involved merchandise." Regarding these invoices our appellate court said:

*   *   *   Furthermore, there is nothing in the invoices of Montgomery Ward & Co.   *   *   *   to indicate that the merchandise covered thereby was freely offered for sale to all purchasers in the principal markets of Germany for export to the United States at the prices therein set forth.

The above observation of our appellate court regarding the Montgomery Ward & Co. invoices in the *Sears* case, *supra*, is equally applicable to the papers constituting collective exhibits 11, 12, 13, 14, and 15 in the instant case.

To give any weight to the values shown on these exhibits would be to clothe them with evidentiary value which obviously they do not possess. These exhibits in and of themselves do not tend to establish any statutory value. In view of the fact that the orange oil covered by said exhibits was "such" orange oil as that here involved, that it was sold in the same principal market as the involved merchandise, and on dates not far removed from the dates on which the involved merchandise was sold, it would appear that the evidence herein, which establishes a value of $2.40 per pound, was available and might well have been applied to the orange oil covered by said exhibits, had the value thereof been tested by an appeal to reappraisement. In that event these exhibits would show a final appraised value of the orange oil of $2.40 per pound. Under such circumstances these exhibits would not now be available to show any statutory value higher than $2.40 per pound.

Upon a full consideration of the entire record we find:

1. That the merchandise involved herein consists of orange oil from the Dominican Republic and entered at the port of New York on February 18 and March 2 and 9, 1942.

2. That a usual wholesale quantity of said merchandise is 1 pound or more, and that the price does not vary according to the quantity purchased.

3. That Ciudad Trujillo, Dominican Republic, is one of the principal markets for the sale of such or similar orange oil.

4. That there is no foreign market or value for such or similar merchandise.

5. That the proper basis of appraisement is export value, and that the price at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country of exportation in usual wholesale quantities and in the ordinary course of trade is $2.40 per pound, plus packing.

We, therefore, conclude that the proper dutiable export value of the orange oil involved in the three appeals covered by this application is $2.40 per pound, plus packing. The judgment of the trial court is, therefore, modified to this extent. Judgment will be rendered accordingly.